## ADAMS *vs.* McKENZIE.

1. Where a usurious debt has been settled, by the creditor taking in satisfaction property mortgaged to secure it, a court of equity will not open the transaction and allow a redemption, on the ground of the usury alone.
2. Where the mortgagee has paid the full value of the mortgaged property, and without fraud, misrepresentation, or the exercise of undue influence, obtained from the mortgagor a release of the equity of redemption, a court of equity will not disturb the transaction.

Error to the Chancery Court of Barbour. Tried before the Hon. J. W. Lesesne.

Belser & Harris, for the plaintiff in error.

Buford, for the defendant.

DARGAN, C. J.—The material facts disclosed by the bill, answer, and proofs, are these: In the year 1832, Adams, the complainant, borrowed of McKenzie, the defendant, one thousand dollars, and agreed to pay him twenty-five per cent. interest thereon.  At the same time, he executed to him a deed of trust on several slaves, to secure the payment of the sum borrowed, together with the usurious interest, by which he authorised McKenzie to sell them, and after paying himself to return the balance to him, Adams.  In the early part of the year 1833, the slaves were put up at auction by McKenzie and were bid off by one Curry, but who it seems purchased them for McKenzie.  After the sale, however, McKenzie still acknowledged the right of complainant to redeem the slaves.  A short time after the sale, Adams being dissatisfied, it was agreed that one Burch should value the slaves and that McKenzie should pay to Adams the difference between the value that Burch should set upon the slaves and the sum of money due to McKenzie from Adams.  Burch valued the slaves at sixteen hundred and fifty dollars, and thereupon McKenzie paid to Adams three hundred and seventy-five dollars; and upon the receipt of this sum by Adams, he executed a receipt to McKenzie, acknowledging the receipt of the money, as due to him on the sale of the slaves, and expressed himself fully satisfied.  This receipt bears date the 29th March, 1833.  After this McKenzie paid about four hundred and fifty dollars more for the purpose of protecting the property from executions issued against Adams, and which created a lien, older than the deed of trust.  The bill was filed in the year 1841, and prays that the slaves be delivered up by the defendant, that they be sold, and after paying the defendant the amount actually due to him, that the residue be paid to the complainant.

We consider this bill in no other light than a bill to redeem the slaves, notwithstanding the release of the equity of redemption, and the only ground alleged or proved, to entitle the complainant to this relief, is the usury in the original transaction. I have not been able to find a case where the usurious debt has been settled by taking the property conveyed to secure it, that a court of equity would open the transaction and allow a redemption on the ground of the usury alone.  It is true, if a mortgagee uses the power his mortgage may have given him over

the mortgagor, and thereby obtain the equity of redemption at an under value, equity will still hold the transaction a mortgage, and allow the mortgagor to redeem.—14 Ala. 114, and cases there cited.

But in the case before us, the mortgagee paid the value set upon the slaves by one mutually chosen to set a value on them, and we cannot discover from the evidence that his valuation was incorrect. After this, the defendant paid four hundred and fifty dollars more to protect his title, thus making the actual amount paid, after deducting the usurious interest, fully equal to the value of the slaves. There does not appear to have been either fraud, misrepresentation, or undue influence practiced by the defendant in obtaining the release of the equity of redemption, and we do not think the transaction ought to be disturbed.

There might have been several objections taken to the bill, but as they were not raised either by a demurrer, or by the answer, we have not noticed them.

Let the decree of the chancellor, dismissing the bill, be affirmed.

CHILTON, J., not sitting.